**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEITH MCBRIDE**,<br><br>Petitioner,<br><br>v.<br><br>**KUHN et. al.**,<br><br>Defendant. | Civil Action No. 22-2016 (ZNQ)<br><br>**AMENDED OPINION** |

**QURAISHI, District Judge**

### I.  INTRODUCTION

Petitioner, Keith McBride ("Petitioner"), is a state prisoner proceeding with a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1).  For the following reasons, the petition is denied and a certificate of appealability shall not issue.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

The background giving rise to Petitioner's judgment of conviction was summarized by the New Jersey Superior Court, Appellate Division on Petitioner's direct appeal as follows:

> After work on October 19, 2006, the victim, Robert Funderberk, went with friends to a restaurant in Rahway. He later drove his friends home and then drove to Brother's Bistro in Carteret, where he encountered co-defendant, Janean Owens, and her friend, Timisha Sanford. Owens knew the victim and sat with him at the bar and had a drink. The bar closed at 2:00 a.m., at which time Sanford left the bar without Owens. As Sanford walked from the bar, the victim pulled up in his truck with Owens, who was seated in the front passenger seat. Owens told Sanford to get into the truck and accompany her to purchase cigarettes at a nearby BP gasoline station. Sanford complied. Owens then told the victim she needed to pick up defendant, Keith McBride, nicknamed "Special" or "SP," who Owens was dating at the time and who resided with her at an apartment a short distance from Brother's Bistro.

The victim drove to Owens' apartment. Owens exited the truck and went inside the building for a few minutes while the victim and Sanford waited in the truck. Eventually, Sanford heard Owens' voice at the back of the truck and got out to see what was going on. When she got to the back of the truck, she saw defendant and Owens. Defendant handed Sanford an object wrapped in a red rag and told her "to handle that." Sanford took the package and got back into the truck. When she realized the rag concealed a firearm, she exited the truck and told both defendants she was not "doing that shit." Owens snatched the gun from Sanford and declared she would "get the ni***r." Defendant then told Sanford to "get in the fuckin' truck." Defendant got into the front passenger seat while Sanford got into the back seat behind him. Owens got into the backseat behind the victim.

As the victim drove the truck, Owens pointed the firearm close to the back of his head and pulled the trigger. After Owens shot the victim, defendant asked her "what the fuck did you do that for?" When the victim's truck came to halt, defendant, with Owens' help, moved the victim's body into the front passenger seat. Owens tried but was unable to drive the truck, so defendant ordered Sanford to drive. Defendant and Owens got into the back seat. At defendant's direction, Sanford drove the truck to Newark.

When they neared a building in an industrial zone, defendant told Sanford to pull into an area near a dumpster. Defendant and Owens exited the car and pulled the victim's body out of the truck.

After abandoning the body, defendant took over the wheel and drove around the city in an attempt to find a "chop shop." The search was unsuccessful and all three eventually abandoned the truck. Before leaving, Owens used the red rag to wipe down the truck.

A few hours after the victim's body was abandoned, a security guard, who worked at one of the warehouses in the area, discovered the body and called the police. The victim was found lying on his back with the left pocket of his pants pulled out. An autopsy revealed the cause of death as a single gunshot wound to the head.

The weekend following the murder, the victim's girlfriend received information about his killing and relayed this information to the Newark Police Department. Acting on this information, the police located Sanford, who agreed to accompany them to the police station. Sanford confessed to what happened and was subsequently arrested. Sanford identified Owens and defendant from photographs.

Owens was arrested on October 25, 2006, and consented to a search of her apartment. The police seized a pair of sneakers. Owens' mother also consented to have her home searched. During that search, the police discovered a plastic bag containing clothes in a garbage can. Defendant, the last to be arrested, was apprehended eight months later in New York City.

Police obtained the surveillance tape from the warehouse where the victim's body was abandoned. The tape showed defendant looking over the area around the dumpster before motioning to Sanford to drive the truck up to it. The tape then showed defendant dragging the victim's body out of the truck with Owens emerging from the truck to help him.

The state submitted several items for forensic testing, among them, the sneakers seized from Owens' apartment. The sneakers were subjected to DNA testing, and a stain on one shoe provided a DNA profile matching the victim. The police never recovered the murder weapon.

(ECF No. 11-13, at page 3-6).

For the incident summarized above, Petitioner was convicted, under Indictment 09-12-02112, of conspiracy to commit robbery, N.J.S.A. § 2C:5-2 and 2C:15-a (Count 3); armed robbery, N.J.S.A. § 2C:15-l (Count 4); theft of an automobile, N.J.S.A. § 2C:20-3 (Count 6); felony murder, N.J.S.A. § 2C:11-3a(3) (Count 7); possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39- 4a (Count 8); unlawful possession of a weapon, N.J.S.A. § 2C:39-5b (Count 9); two counts of hindering apprehension, N.J.S.A. § 2C:29-3 a(3) (Counts 10 and 11); and two counts of disturbing human remains, N.J.S.A. § 2C:22-la(l) and lb (Counts 12 and 13). (ECF No. 11-13, at page 2). Under Indictment 07-01-00159, for which Petitioner was tried separately, he was convicted of certain persons not to have weapons, N.J.S.A. § 2C:39-7b. (ECF No. 11-13, at page 2).

Petitioner was sentenced to an aggregate term of thirty years imprisonment, to be served without parole for the convictions arising from Indictment 09-12-02112. (ECF No. 11-13, at page

2).  For the conviction arising under Indictment 07-01-00159, Petitioner was sentenced to twenty years imprisonment, with a ten-year period of parole ineligibility, to be served consecutive to the thirty-year term imposed on Indictment 09-12-02112. (ECF No. 11-13, at page 2).

Petitioner filed a direct appeal. On October 23, 2012, the Appellate Division affirmed Petitioner's conviction but remanded for correction of the judgment of conviction (JOC) so that the conspiracy conviction could be merged with the robbery conviction, and for the trial court's reconsideration of the imposition of consecutive sentences. (*See* ECF No. 11-13, at page 3).

Petitioner then sought review from the New Jersey Supreme Court. On May 13, 2013, the New Jersey Supreme Court denied certification of Petitioner's direct appeal. (ECF No. 11-16).

On remand, the trial court imposed the same sentence as it had previously. (ECF No. 11-17).  Petitioner appealed his re-sentence. On September 28, 2015, the Appellate Division affirmed the re-sentence. (ECF No. 11-18). Petitioner again sought review from the New Jersey Supreme Court. On January 18, 2017, the New Jersey Supreme Court denied certification. (ECF No. 11-21).

Petitioner filed a post-conviction relief ("PCR") petition. On January 18, 2018, the PCR court denied his petition without an evidentiary hearing. (ECF No. 11-28). Petitioner appealed, and the Appellate Division affirmed the denial on October 1, 2020. (ECF No. 11-32). On May 11, 2021, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 11-35).

On April 7, 2022, Petitioner filed the instant habeas petition. (ECF No. 1). Respondents filed an answer on July 11, 2023. (ECF No. 11), and Petitioner filed a reply on December 28, 2023. (ECF No. 19).  The matter is now fully briefed.

### III. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable

application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV. DISCUSSION

### A. Ground One

In ground one, Petitioner raises various claims of ineffective assistance of trial counsel. (ECF

No. 1, at page 9-10). Specifically, Petitioner alleges the following grounds for relief:

1) Trial Counsel failed to argue for a judgment of Acquittal on Counts 4 and 7 (Robbery and Felony Murder), depriving Petitioner of the effective assistance of counsel. Such a motion would have been meritorious, based on the lack of any evidence supporting the inference that Petitioner had a purpose to commit a theft or robbery of the victim.

2) Trial Counsel failed to object to the numerous deficiencies in the jury charge and verdict sheet, or to argue that they constituted plain error, depriving Petitioner of the effective assistance of counsel. The verdict sheet was presented to the jury missing the crucial element of Robbery, the purpose to commit a theft. Although that error was later corrected after deliberations began, the error was not harmless.

3) Trial Counsel failed to request a special verdict regarding the object of the alleged theft that predicated the robbery charge, depriving Petitioner of the effective assistance of counsel. The State argued that Petitioner sought to steal the victim's vehicle, or alternatively his personal property. But the jury was not asked which one, and their verdicts on the individual theft counts indicate a lack of unanimity.

4) Trial counsel's failure to object to Dolores Coniglio's testimony about the hearsay report of Julie Weldon, which violated Petitioner's right to Confrontation under the Sixth Amendment to the United States Constitution, was ineffective assistance of counsel. The State introduced DNA analysis through the testimony of Dolores Coniglio, who was reporting the hearsay conclusions of Julie Weldon, who did not testify. This violated Petitioner's rights as determined by *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), where the Court ruled that where certificates of analysis are admitted into evidence, the Sixth Amendment is violated by introducing them through the testimony of a "surrogate" who had no connection to the analysis.

(*Id.*)

7

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  *See Strickland*, 466 U.S. at 687.  To establish an ineffective assistance of counsel claim, a petitioner must first prove "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  In analyzing counsel's performance, the court must be "highly deferential."  *Id.* at 689.  The Supreme Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A convicted defendant asserting ineffective assistance must therefore identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.  *Strickland*, 466 U.S. at 690. The reviewing court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance." *Id.* It follows that counsel cannot be ineffective for declining to raise a meritless issue.  *See Premo v. Moore*, 562 U.S. 115, 124 (2011).

The second part of the *Strickland* test requires a petitioner to demonstrate that counsel's performance "prejudiced the defense" by depriving petitioner of "a fair trial, a trial whose result is reliable." 466 U.S. at 687. To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694.

If a petitioner fails to satisfy either prong of the *Strickland* test, it is unnecessary to evaluate the other prong, as a petitioner must prove both prongs to establish an ineffectiveness claim. *Id.* at 697. Moreover, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." *Id.*

Because Petitioner's ineffective assistance of counsel claim is raised through a § 2254 petition, federal "review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" *See Woods*, 575 U.S. at 316 (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)); *see also Pinholster*, 563 U.S. at 190 ("[R]eview of the [State] Supreme Court's decision is thus doubly deferential."); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[D]oubly deferential judicial review applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . ."); *see also Yarborough v. Genrty*, 541 U.S. at 1, 6 (2003) ("Judicial review of a defense attorney . . . is therefore highly deferential--and doubly deferential when it is conducted through the lens of federal habeas."). Indeed, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *See Harrington v. Richter*, 562 U.S.86, 105 (2011).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These deferential

standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

### 1.   Ground One, Subclaim one

In ground one, subclaim one, Petitioner argues that trial counsel was ineffective for failing to move for judgment of acquittal on Petitioner's robbery and felony murder charges (Counts Four and Seven). (ECF No. 1, at page 9).  Petitioner argues that there was insufficient evidence at trial to support the inference that Petitioner had a "purpose to commit a theft or robbery of the victim." (*Id.*)

Here, Petitioner raised this ineffective assistance of trial counsel claim on collateral appeal before the Appellate Division. The Appellate Division – the last reasoned state court decision – affirmed the PCR court's decision and denied this claim, stating, in relevant part:

> We turn first to McBride's contention that his trial counsel was ineffective for failing to argue for a judgment of acquittal on the robbery and felony murder counts . . .

> We are unpersuaded. While defendant asserts that defense counsel never argued for a judgment of acquittal on the robbery and felony murder counts, this assertion is belied by the record. At the close of the State's case, counsel stated, "I do have the normal motion for judgment of acquittal on all counts," but then focused on the disturbing-human-remains counts, and briefly discussed the murder charge. Noting the motion presented a "very close call," the court granted the motion in part, and dismissed one of the disturbing-human-remains counts. The issue was not raised on direct appeal.

> However, neither trial counsel nor appellate counsel were ineffective. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." *State v. O'Neal*, 190 N.J. 601, 619 (2007). Had trial counsel presented a fulsome argument regarding the robbery and felony murder counts, or had appellate counsel raised the issue on direct appeal, the result would have been the same.

> An appellate court reviews a sufficiency of the evidence claim *de novo*. *See State v. Williams*, 218 N.J. 576, 593-94 (2014). When a defendant moves for a judgment of acquittal under Rule 3:18-1, a court "must

determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." *Id.* at 594 (citing *State v. Reyes*, 50 N.J. 454, 458–59 (1967)).

"When 'each of the interconnected inferences [necessary to support a finding of guilt beyond a reasonable doubt] is reasonable on the evidence as a whole,' judgment of acquittal is not warranted." *State v. Samuels*, 189 N.J. 236, 246 (2007) (alteration in original) (quoting *United States v. Brodie*, 403 F.3d 123, 158 (3d Cir. 2005)). Moreover, if there is no direct evidence of a tacit plan or agreement, a jury may infer one from the "interconnected favorable inferences" the State presents. *Id.* at 249; *see also State v. Stull*, 403 N.J. Super. 501, 506 (App. Div. 2008) (noting that "[w]hen there is no direct testimony, the factfinder may rely solely on inferences available from the proofs").

Although evidence of McBride's intent was certainly circumstantial, Sanford's general narrative indicated McBride and Owens had a plan. McBride and Owens spoke behind the car, out of earshot from Funderberk. The jury could infer they were planning something at Funderberk's expense. Although McBride initially gave the gun to Sanford, he may have misunderstood that Sanford was in league with Owens; or Sanford may have, at trial, tried to minimize her own involvement. In any event, when Sanford refused to "handle it," and Owens "snatched" it from her, McBride did not intervene. Owens stated she was going to "get" Funderberk, referring to him by a racial epithet. McBride ordered Sanford to get in the truck, demonstrating his shared intent with Owens. Nor did McBride dissuade Owens when she pointed the gun at Funderberk's head. Rather, he confirmed to her that if she pulled the trigger, the gun would fire. Although McBride yelled at Owens immediately after she fired the shot, that did not necessarily mean McBride had no plan to rob, as McBride argues. Rather, the jury may have inferred that Owens had deviated from the plan by shooting Funderberk, whether they she did so intentionally or accidentally.

Also, although testimony was not clear whether Funderberk was wearing his large gold chain with a medallion that night, Sanford testified that McBride wore a large gold necklace with a medallion. Moreover, Sanford testified McBride did not have it before he removed Funderberk's body from the truck. She indicated at trial the necklace McBride wore "look[ed] like" the one Funderberk was known to wear. Furthermore, Funderberk was found without a driver's license, credit cards or cash, with his pants pocket inside out, although he had just come from a bar where he presumably had money to spend.

> In sum, the State presented sufficient evidence for the jury to convict defendant of robbery and felony murder. Therefore, McBride did not receive ineffective assistance of counsel as a result of trial counsel's failure to argue more vigorously for a judgment of acquittal, and appellate counsel's failure to raise the issue on appeal.

(ECF No. 11-32, at page 9-13).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) ("[T]he clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in *Jackson* . . . .").

The dispositive question under *Jackson* is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). The analysis under *Jackson* requires courts to analyze the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In conducting this review, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*; *see also Orban v. Vaughn*, 123 F.3d 727, 731 (3d Cir. 1997). Thus, where the evidence could support conflicting inferences, the habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution." *Jackson*, 443 U.S. at 326; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011). A jury's verdict may be based entirely on

12

circumstantial evidence, so long as the *Jackson* standard is satisfied, and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954); *see also Lum v. State*, 101 A.3d 970, 971 (Del. 2014) (noting that, when determining if there was sufficient evidence, the Delaware Supreme Court does not distinguish between direct and circumstantial evidence). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).

"When assessing such claims on a petition for habeas relief from a state conviction, the sufficiency of the evidence standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Robertson v. Klem*, 580 F.3d 159, 165 (3d Cir.2009) (quoting *Jackson*, 443 U.S. at 324 n.16). Count Four of the indictment charged armed robbery pursuant to N.J.S.A. § 2C:15-1. The statute reads that a "person is guilty of robbery if, in the course of committing a theft, he:

> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree."

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission. N.J.S.A. § 2C:15-1. In Count Seven, Petitioner was charged with felony murder pursuant to N.J.S.A § 2C:11-3a(3). A person is guilty of felony murder if a homicide "is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or

an attempt to commit, or flight after committing or attempting to commit robbery . . ." N.J.S.A. § 2C:11–3a(3).

Here, the Appellate Division explained that there is sufficient evidence to support a conviction if a "reasonable jury could find guilt beyond a reasonable doubt." (ECF No. 11-32, at page 12). The Appellate Division explained that there was circumstantial evidence presented at trial in support of the robbery and felony murder charges. Specifically, Petitioner and co-defendant Owens had a private conversation prior to the shooting of the victim, Petitioner ordered Sanford into the car, and Petitioner did not dissuade Owens from shooting the victim. (ECF No. 11-32, at page 12-13). There was also testimony at trial that Petitioner was wearing a necklace like one that the victim wore, and the victim was found without his driver's license, credit cards or cash, and with his pant pockets inside out.[1] (ECF No. 11-32, at page 13). The Appellate Division found that there was sufficient evidence for the jury to convict Petitioner of robbery and felony murder.

Based on the evidence summarized by the Appellate Division "the record evidence could reasonably support . . . beyond a reasonable doubt" a finding of guilty of robbery and felony murder. *Jackson*, 443 U.S. at 318. This Court finds that the Appellate Division did not unreasonably apply clearly established federal law or deny this claim based on an unreasonable determination of the facts.

After considering the underlying sufficiency of the evidence claim, the Appellate Division – having found sufficient evidence to support Petitioner's convictions – held that trial counsel was not ineffective for failing to argue more vigorously for a judgment of acquittal. Indeed, an attorney's failure to present a meritless argument does not amount to constitutionally ineffective

---

[1] Circumstantial evidence was presented to demonstrate that the victim had a driver's license and money in his possession, as he was driving earlier in the evening and had purchased food and drinks at a restaurant. (ECF 11-10, at page 6).

assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth

Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless

argument."). Thus, this Court concludes that the Appellate Division reasonably applied *Strickland*

in holding that trial counsel's failure to more vigorously present a meritless challenge to the

sufficiency of the evidence supporting Petitioner's convictions, did not amount to constitutionally

ineffective assistance. Therefore, ground one, subclaim one, will be denied.

### 2.   <u>Ground One, Subclaim Two</u>

In ground one, subclaim two, Petitioner argues that trial counsel was ineffective for failing

to object to the deficiencies in the jury charge and the verdict sheet. (ECF No. 1, at page 9).

Petitioner argues that the verdict sheet presented to the jury was missing the crucial element of

robbery, and, although the error was corrected, the error was not harmless. (*Id.*)

Here, Petitioner raised this ineffective assistance of trial counsel claim on collateral appeal

before the Appellate Division. The Appellate Division – the last reasoned state court decision –

affirmed the PCR court's decision and denied this claim, stating, in relevant part:

> Defendant next contends trial counsel was constitutionally ineffective
> for failing to object to the jury charges on armed robbery, and appellate
> counsel was ineffective for not arguing the final jury charge constituted
> plain error.
>
> In its initial charge to the jury on robbery, the trial court inconsistently
> stated on one hand, that the intent to commit theft must precede or be
> coterminous with the use of force, and, on the other hand, the intent to
> commit theft may occur after the use of force. …
>
> Without question, this jury charge was erroneous. The final sentence did
> not follow from the previous two, and it incorrectly stated the law. Trial
> counsel did not object to this charge.
>
> Not surprisingly, the jury requested clarification the next day. The jury
> asked for the trial judge to "fully explain count 4, armed robbery." The
> court re-charged the jury on robbery, correcting the misstatement. The
> court explained, "To find the defendant guilty of robbery the intent to

commit the theft, the intent, the state of mind to commit the theft must precede or be coterminous with the use of force."

Without question, this jury charge was erroneous. The final sentence did not follow from the previous two, and it incorrectly stated the law. Trial counsel did not object to this charge.

Not surprisingly, the jury requested clarification the next day. The jury asked for the trial judge to "fully explain count 4, armed robbery." The court re-charged the jury on robbery, correcting the misstatement. The court explained, "To find the defendant guilty of robbery the intent to commit the theft, the intent, the state of mind to commit the theft must precede or be coterminous with the use of force." The court then repeated, for emphasis, "In other words, the defendant must have formed the intent to commit a theft before or during his use of force. Before or during the use of force." Then, correcting its previous statement, the court explained, "If you find defendant formed the

intent to commit a theft after the use of force then he cannot be found guilty of a robbery." The court then added, to distinguish robbery from armed robbery, "If the defendant is armed with or uses or threatens the use of a deadly weapon the crime becomes armed robbery." Defense counsel did not object to the new charge.

In addition to re-charging the jury, the court noted that the verdict sheet for the armed robbery count had omitted the phrase "in the course of committing a theft did use force." Thus, the original verdict sheet asked whether "McBride did use force upon Robert Funderberk and/or inflict bodily injury upon Robert Funderberk, and/or commit the crime of murder upon Robert Funderberk while armed with and/or by use of a deadly weapon." The judge supplied the jury a corrected verdict sheet that added the missing phrase.

Even assuming defense counsel was ineffective in failing to object to the erroneous charge and verdict sheet, counsel's failure did not cause prejudice - because the court corrected both errors before the jury reached a verdict. We also reject McBride's argument that the sentence distinguishing between robbery and armed robbery was deficient, and counsel was ineffective by failing to object to it. . . .

The final charge accurately and clearly stated the law. The trial court's correction resolved any confusion the jury may have had. We reject McBride's argument that he suffered prejudice, because the jury was permitted to deliberate for an hour between when the court noticed the error and when it corrected it. The jury requested clarification on the jury charge and then took a lunch break. Upon returning, the jury

16

> deliberated for less than an hour, and presumably was awaiting the court's response when it returned. In any event, the court corrected the error in time for the jury to apply the accurate statement of law before reaching a verdict. We presume the jury followed the court's instruction. *See State v. Loftin*, 146 N.J. 295, 390 (1996)….
>
> Therefore, defendant's trial and appellate counsel were not constitutionally deficient in failing to raise this claim at trail and on direct review.

(ECF No. 11-32, at page 13-17).

Petitioner, admitting that the trial court corrected the error in the jury instructions and verdict sheet, argues that that his attorney was ineffective for failing to object to the court's error. (ECF No. 1, at page 9).

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), cert. denied, 534 U.S. 919 (2001). A petitioner can therefore only show an entitlement to habeas relief based upon allegedly inadequate jury instructions where the petitioner proves that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing that the instruction rendered his trial fundamentally unfair. *Id.* Additionally, courts may not judge the instruction in isolation but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

Here, the Appellate Division did not unreasonably apply clearly established federal law when it found that trial and appellate counsel were not ineffective for their failure to object to the jury charges. (ECF No. 11-32, at page 13-14). The Appellate Division noted that while the trial court made a mistake during the initial charge on the elements of robbery, the mistake was

corrected the following day when the trial court recharged the jury on robbery pursuant to the jury's request for a recharge. (*Id.*). The Appellate Division also noted that the error on the verdict sheet delineating the elements of robbery was corrected with an amended verdict sheet. (ECF No. 11-32, at page 15). Accordingly, the Appellate Division held that even if trial counsel's failure to object to the initial erroneous charge and the initial verdict sheet was ineffective, it was not prejudicial under *Strickland* because the errors were corrected before the jury reached its verdict. (ECF No. 11-31, at page 15-16).

      In the ineffective assistance of counsel context, failing to object to an erroneous jury charge is not presumed ineffective assistance. Undeniably, not all errors involving the actions of counsel trigger a presumption of prejudice under *Strickland*. This is because to establish prejudice, a Petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For that reason, when counsel "makes an isolated error during the trial, such as failing to object to a jury instruction, the defendant must show actual prejudice to prevail on a claim of ineffective assistance of counsel." *Baxter v. Superintendent Coal Township SCI*, 998 F.3d 542, 548 n.7 (3rd Cir. 2021).

      Given the trial court corrected the errors in the jury instructions prior to the jury rendering a verdict, and the overwhelming evidence against Petitioner summarized above, Petitioner is unable to show how counsel's failure to object to the erroneous charge – especially when that charge was corrected by the trial court – resulted in actual prejudice that rendered his "trial fundamentally unfair" and "so infected the entire trial that the resulting conviction violate[d] due process." *Duncan*, 256 F.3d 189 at 203 (3d Cir.); *See e.g., Johnson v. Superintendent Coal Township SCI*, 2023 WL 7412950 (3rd Cir. August 31, 2023) ("Given the evidence of guilt presented at trial, jurists of reason would agree without debate that [petitioner] cannot show

prejudice."); *Nam v. Superintendent Huntington SCI*, 2023 WL 11869066 (3rd Cir. June 5, 2023) (same).[2]

The overwhelming evidence – not least of which is the surveillance video depicting Petitioner's actions –  the corrected jury instruction, and the jury instructions taken as a whole, Petitioner cannot show a "reasonable probability" that, absent trial counsel's failure to object to the erroneous jury instruction, the verdict would have been different. *See Baxter v. Superintendent Coal Township SCI*, 998 F.3d 542 (3rd Cir. 2021)(petitioner not entitled to habeas relief when state court corrects an error in jury instructions because Petitioner unable to demonstrate prejudice prong of *Strickland*).

Accordingly, this Court finds the Appellate Division reasonably applied *Strickland* in finding that trial counsel was not ineffective for failing to raise this meritless claim.

---

[2] In his reply brief, Petitioner contends the jury's finding of guilt on theft of an automobile, the jury's acquittal on conspiracy to commit theft of an automobile, and the jury's acquittal on theft of personal property establish the jury was confused about the robbery instruction, even after the instruction was corrected. (ECF No. 19, at 35-38).  Petitioner's theory is that if he did not have a plan with Owens to steal the car, and he did not steal the personal property, how did he have the requisite intent to commit armed robbery?  (Id. at 37-38).  Petitioner's theory, however, is mistaken.

First, the jury did not acquit Petitioner on conspiracy to commit theft of an automobile. Rather, the jury found Petitioner guilty of conspiracy to commit armed robbery, and they did not consider conspiracy to commit theft of an automobile, as that charge was the lesser included offense that the jury needed to reach only if they had acquitted Petitioner of the armed robbery conspiracy. Thus, Petitioner's theory is not supported. Indeed, the fact that the jury acquitted Petitioner of certain charges showed that the jury was not confused. Second, the state court's determination that the erroneous jury instruction was not prejudicial is not unreasonable. Even if Petitioner did not conspire with Owens and Sanford to steal the victim's vehicle, the record supports a finding by the  jury that  Petitioner intended to commit theft of the victim's vehicle by directing Sanford to take the gun, hidden in a cloth, and get into the vehicle.  While the robbery may not have gone as Petitioner planned when Owens shot the victim,  Petitioner's intent to commit theft of the vehicle is further supported by evidence that after disposing of the victim's body, Petitioner drove around Newark attempting to find a chop shop to sell the parts of the vehicle before giving up and abandoning the vehicle.

### 3.  **Ground One, Subclaim Three**

Petitioner contends that trial counsel rendered ineffective assistance by failing to request a special verdict form requiring the jury to specify the object of the alleged theft underlying the robbery charge—whether it was the victim's vehicle or other personal property. (ECF No. 1 at 10.) Petitioner argues that the jury's general verdict, without clarification of the object of theft, allowed for a non-unanimous theory of guilt and therefore violated the Sixth Amendment right to a unanimous jury verdict.  (*Id.*) Clearly established federal law governing this issue at the time of the Appellate Division's affirmance of the PCR court's decision is *Ramos v. Louisiana*, 590 U.S. 83 (2020).

The Appellate Division affirmed the PCR Court's denial of this claim without a written opinion because it lacked sufficient merit to warrant discussion pursuant to N.J. Ct. R. 2:11-3(e)(1)(E). (ECF No. 11-32 at 20.)  Under *Wilson v. Sellers*, 584 U.S. 122, 128 (2018), habeas courts should "look through" the unexplained affirmance to the PCR court's decision, which constitutes the last reasoned state-court judgment.

The PCR court denied the claim, stating:

> Defense argues the jury should have been asked to return a special verdict on the theft that supported the armed robbery. However, this claim is raised for the first time in this PCR petition. This claim of error is procedurally barred and none of the exception applies here. Trial court instructed jury that the verdict must be unanimous. The jury was polled after it read its verdict in open court to ensure it was a unanimous verdict. And again, it should be noted that the first three charges in the indictment this defendant was found not guilty of those charges.

 (ECF No. 13-3 at 21).

In *Ramos*, the Supreme Court held that the Sixth Amendment requires a unanimous jury verdict to convict a defendant of a serious offense, and that this requirement applies equally to

both state and federal trials. *Id.* at 93. However, *Ramos* did not hold that juries must return special verdicts identifying the specific factual theory on which their verdict is based. Rather, the Court reaffirmed that the requirement is for unanimity as to each element of the offense—not unanimity as to the means of committing a particular element. *Id.* at 92.

Under New Jersey law, robbery is defined in N.J. Stat. Ann. § 2C:15-1(a), which provides:

"A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another;
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree."

The statute does not require the jury to specify the object of the theft so long as they unanimously find that the defendant committed a theft through force or threat.

Here, the PCR court found the trial court properly instructed the jury that its verdict must be unanimous, and the jury was polled in open court after returning its verdict to confirm unanimity. Petitioner's argument is that, because the State offered two alternative factual theories for what was stolen—the victim's vehicle or personal property—the jury may have been divided on what object supported the robbery conviction. However, New Jersey's robbery statute does not distinguish between vehicle theft and other property theft as a matter of statutory elements. Moreover, the jury here unanimously found Petitioner guilty of theft of an automobile, N.J.S.A. § 2C:20-3 and acquitted him on theft of personal property, N.J.S.A. § 2C:20-3.(ECF No. 11-32 at 5-6.)

Because the jury unanimously agreed that Petitioner committed robbery and theft of an automobile, and because the trial court properly instructed the jury on the requirement of

unanimity, the absence of a special verdict form does not constitute a violation of *Ramos*. Further, *Ramos* itself does not require that a jury indicate on the record which factual theory they relied upon, unless required by the underlying substantive law—which is not the case here.

Thus, the PCR court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by Ramos or any other Supreme Court precedent. Nor was it based on an unreasonable determination of the facts. Habeas relief on this claim is therefore denied.

### 4. **Ground One, Subclaim Four**

In ground one, subclaim four, Petitioner argues that trial counsel was ineffective for failing to object to hearsay presented by State witness Dolores Coniglio regarding the DNA analysis report of Julie Weldon. (ECF No. 1 at 10). Petitioner submits that State witness Dolores Coniglio testified regarding the DNA analysis conclusions of Julie Weldon, who did not testify at trial. (*Id.*) Petitioner claims that this hearsay testimony violated his "right to Confrontation under the Sixth Amendment to the United States Constitution." (*Id.*)

Petitioner raised this claim on collateral appeal and the Appellate Division denied the claim reasoning as follows:

> McBride contends that his trial counsel was ineffective by failing to object when State Police scientist Coniglio presented her former colleague's conclusion that Funderberk's DNA profile was found in a DNA sample taken from McBride's pants. McBride argues that such testimony violated his right of confrontation, as explained in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which the Supreme Court issued six months before McBride's trial. In *Melendez-Diaz*, the Court held that affidavits reporting the results of positive drug tests were testimonial; the affiants were witnesses; and a defendant was constitutionally entitled to cross-examine the affiants at trial. *Id.* at 311.
>
> We are unpersuaded that an objection would have ultimately succeeded in barring the DNA evidence linking McBride to the crime; nor is there a reasonable probability that exclusion would have produced a different

result, given the surveillance video depicting McBride disposing of Funderberk's body.

Applying United States Supreme Court jurisprudence in this area, our State Supreme Court declined to "hold that the testimony of the original person to have performed forensic testing is required in all instances, regardless of the type of testing and the knowledge and independence of review and judgment of the testifying witness." *State v. Roach*, 219 N.J. 58, 60-61 (2014). Rather, "a truly independent reviewer or supervisor of testing results can testify to those results and to his or her conclusions about those results, without violating a defendant's confrontation rights, if" the independent reviewer or supervisor meets three requirements. *State v. Michaels*, 219 N.J. 1, 45-46 (2014). The testifying reviewer must (1) be "knowledgeable about the testing process"; (2) "independently verif[y] the correctness of the machine-tested processes and results"; and (3) "form[ ] an independent conclusion about the results." *Ibid.* In *Roach*, the Court found that a State DNA scientist, utilizing DNA profiles a predecessor prepared, met those requirements. 219 N.J. at 80-81.

Even assuming trial counsel failed to object to Congilio's testimony because he was unaware of the right to do so on Confrontation Clause grounds, McBride has not demonstrated that the objection would have succeeded in barring Coniglio's testimony about Weldon's analyses. Rather, it would have likely triggered the sort of discussion that the testifying scientist in _Roach_ provided. Notably, Congilio testified that she reviewed Weldon's notes, as well as her report. She utilized Weldon's profile of Funderberk's DNA, drawn from a sample of his blood, in preparing her own report of samples she tested after Weldon had left. Coniglio matched Funderberk's profile Weldon prepared, to a DNA profile that Congilio personally prepared from a sample taken from Owens's sneakers. Thus, Coniglio was intimately familiar with Funderberk's DNA profile.

Furthermore, . . . we discern no prejudice under *Strickland's* second prong. That is because the DNA evidence was not the only proof of McBride's presence. Sanford testified that McBride was present, and the video surveillance of McBride removing Funderberk's body from the truck, and disposing of it, proved exactly the same thing. In sum, McBride has not established a right to PCR based on the failure to object to Coniglio's testimony.

(ECF No. 11-32, page 17-20).

The state court's decision was not an unreasonable application of clearly established federal law. Petitioner argues that counsel's deficient performance violated his rights under the Confrontation Clause of the Sixth Amendment, which is applicable to the States through the Fourteenth Amendment. *Tennessee v. Lane*, 541 U.S. 509, 523 (2004). The Confrontation Clause guarantees a criminal defendant the right to confront "the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). The Confrontation Clause often arises "when a witness refers to specific information from a non-testifying third party." *Turner v. Warden*, No. 18-17384, 2022 WL 951309, at *8 (D.N.J. Mar. 30, 2022). The right to confrontation, however, may "be waived, including by [a] failure to object to the offending evidence." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.3 (2009).

The United States Supreme Court has held that "the Confrontation Clause requires the authentication of testimonial evidence by a person who certified the evidence, personally performed the work to produce the evidence, or observed the performance of such work." *Stevens v. Warren*, No. 13-2831, 2017 WL 5889811, at *7 (D.N.J. Nov. 28, 2017) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011)). The Appellate Division explained that Coniglio used Weldon's profile of Funderberk's DNA in "preparing *her own* report of samples *she tested*." (ECF No. 11-32 at 19, emphasis added.) Coniglio matched that DNA profile prepared by Weldon to a DNA profile that Coniglio personally prepared. State witness Coniglio performed her own independent DNA profile.

The Appellate Division found Conigilo's testimony does not fall within the type of testimony cautioned against by the Supreme Court where an analyst merely presents the report of

another. *See Bullcoming*, 564 U.S. at 662. Here, Conigilo's expert opinion was informed by her own independent analysis. Accordingly, the state court's determination that Petitioner's rights under the Confrontation Clause were not violated was not contrary to, or an unreasonable application of clearly established federal law.

Additionally, the Appellate Division found that even if trial counsel was deficient in failing to object to Coniglio's testimony, Petitioner failed to show prejudice necessary under the second prong of *Strickland*. The Appellate Division noted that the DNA was only one piece of the evidence against Petitioner. Sanford testified that Petitioner was present and there was video showing Petitioner removing the victim's body from the truck and disposing of it. Based on this evidence, Petitioner cannot show that but for trial counsel's failure to object Coniglio's testimony, the outcome of his trial would have been different. The state court's decision was not an unreasonable application of the *Strickland* standard. Therefore, this ground for habeas relief is denied.

**B. Ground Two**

In ground two, Petitioner argues that his conviction was obtained using evidence – State witness Dolores Coniglio's testimony regarding the DNA analysis report of Julie Weldon – that violated his Confrontation Clause rights. (ECF No. 1 at page 10-11).[3] But this claim is meritless and does not warrant relief.

As noted above, the Appellate Division explained that Coniglio used Weldon's profile of Funderberk's DNA in "preparing *her own* report of sample *she tested*." (ECF No. 11-32 at 19,

---

[3] The Court notes that in his petition, Petitioner appears to have mistakenly referenced the wrong subsection when arguing this Ground for relief. (ECF No. 1, at page 10). Rather than referencing Ground One, subsection D – the Confrontation Clause argument – Petitioner references Ground One, subsection A, the sufficiency of the evidence argument. In his reply brief, Petitioner correctly labels and references the appropriate argument. (ECF No. 19, at page 47).

emphasis added).  Coniglio matched that DNA profile prepared by Weldon to a DNA profile that Coniglio personally prepared. Thus, she performed her own independent DNA profile as required by the Confrontation Clause.

Moreover, the Appellate Division found Conigilo's testimony did not violate the Confrontation Clause because she was not an analyst merely presenting the report of another. *See Bullcoming*, 564 U.S. at 662. Rather, her expert opinion was informed by her own independent analysis. Thus, the state court's determination that Petitioner's rights under the Confrontation Clause were not violated was not contrary to, or an unreasonable application of clearly established federal law.

Accordingly, and for the reasons stated above, this Ground for relief must be denied.

### C. Ground Three

 In ground three, Petitioner vaguely argues that he was denied due process of law under the Fourteenth Amendment. (ECF No. 1 at page 11).  But Petitioner makes no argument as to how his Due Process rights were violated. Petitioner merely points this Court to the arguments he made in Ground one, Subsection one—that there was insufficient evidence supporting his conviction.[4] But Petitioner is mistaken, and this Ground for relief must be denied.

The question in a collateral proceeding, such as a habeas matter, is whether a trial error "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910-911 (3d Cir. 1967). There is sufficient evidence to support a conviction, and thus the conviction does not violate

---

[4] The Court notes that in his petition, Petitioner appears to have mistakenly referenced the wrong subsection when arguing this Ground for relief. (ECF No. 1, at page 11).  Rather than referencing Ground One, subsection A – the sufficiency of the evidence argument – Petitioner references Ground One, subsection D, the Confrontation Clause argument. In his reply brief, Petitioner correctly labels and references the appropriate argument. (ECF No. 19, at page 47).

Due Process, if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, Petitioner has identified no trial error that resulted in a violation of his due process rights, and, as aforementioned, his conviction was supported by legally sufficient evidence. For instance, Petitioner and co-defendant Owens had a private conversation prior to the shooting of the victim, Petitioner ordered Sanford into the car, and Petitioner did not dissuade Owens from shooting the victim. (ECF No. 11-32, at page 12-13). There was also testimony at trial that Petitioner was wearing a necklace like one that the victim wore, and that the victim was found without his driver's license, credit cards or cash – along with circumstantial evidence that he would be in possession of such items because he was driving and earlier paid for food and drinks (See ECF 11-10, at page 6) – and with his pant pockets inside out. (ECF No. 11-32, at page 13). Thus, as the Appellate Division found, there was sufficient evidence for the jury to convict Petitioner of robbery and felony murder, and Petitioner makes no cognizable claim for habeas corpus relief in this ground for relief.

Having reviewed the extensive record in this case, this Court is satisfied that Petitioner's conviction was supported by legally sufficient evidence and did not violate Due Process. Accordingly, and for the reasons stated above, this Ground is denied.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard

by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## VI. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

Dated: April 11, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**